1

2

3

4

5

6

7

8

9              **UNITED STATES DISTRICT COURT**

10        **CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

11

12 ESEQUIEL ESCOBAR,        )   Case No. ED CV 16-0980-AS
                        )

13           Plaintiff,    )   **MEMORANDUM OPINION**
                        )

14     v.                )
                        )

15 NANCY A. BERRYHILL,[1] Acting   )
Commissioner of Social      )

16 Security,             )
                        )

17          Defendant.   )

18 _____)

19

20                       **PROCEEDINGS**

21     On May 13, 2016, Plaintiff filed a Complaint seeking review of the

22 denial of his applications for Disability Insurance Benefits and

23 Supplemental Security Income. (Docket Entry No. 1). The parties have

24 consented to proceed before the undersigned United States Magistrate

25 Judge. (Docket Entry Nos. 11-12). On September 26, 2016, Defendant

26 filed an Answer along with the Administrative Record ("AR"). (Docket

27

28       [1]    Nancy A. Berryhill is now the Acting Commissioner of the
Social Security Administration and is substituted in for Acting
Commissioner Caroyln W. Colvin in this case. <u>See</u> 42 U.S.C. § 205(g).

Entry Nos. 15-16).   On December 22, 2016, the parties filed a Joint

Stipulation ("Joint Stip."), setting forth their respective positions

regarding Plaintiff's claims.   (Docket Entry No. 17).


The Court has taken this matter under submission without oral

argument.   See C.D. Cal. L.R. 7-15; "Order Re: Procedures in Social

Security Case," filed May 16, 2016 (Docket Entry No. 9).


### BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On May 2, 2013, Plaintiff, formerly employed as an ice cream truck

driver, a golf course maintenance worker, and a cashier at a market

(see AR 33, 197, 202-07), filed applications for Disability Insurance

Benefits and Supplemental Security Income, alleging a disability since

April 2, 2013.   (AR 174-78, 182-84).   On October 28, 2014, the

Administrative Law Judge ("ALJ"), Joan Ho, heard testimony from

Plaintiff (who was represented by counsel) and vocational expert Kelly

Winn-Boaitey. (See AR 27-60).   On December 23, 2014, the ALJ issued a

decision denying Plaintiff's applications.   (See AR 13-20).   After

determining that Plaintiff had severe impairments -- "degenerative disc

disease of the thoracic spine and lumbar spine; lubago; and bilateral

shoulder acromial downsloping" (AR 15-16)[2] --, the ALJ found that

---

[2]   The ALJ determined that Plaintiff's depression was not a
medically determinable impairment.

2

Plaintiff had the residual functional capacity ("RFC")[3] to perform the following: lifting and/or carrying 20 pounds occasionally and 10 pounds frquently; standing and/or walking for 6 hours in an 8-hour workday; sitting for 6 hours in an 8-hour workday; and climbing, balancing, stooping, kneeling, crouching, and crawling occasionally. (AR 16-20). Finding that Plaintiff was capable of performing past relevant work as a peddler as generally performed and as a cashier/checker as actually and generally performed, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 20).

Plaintiff requested that the Appeals Council review the ALJ's Decision. (See AR 9). The request was denied on April 8, 2016. (See AR 1-3). The ALJ's Decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

## PLAINTIFF'S CONTENTIONS

Plaintiff alleges that the ALJ failed to properly (1) reject the opinion of Plaintiff's treating physician, Dr. Akmakjian; and (2) pose a complete hypothetical question to the vocational expert. (See Joint Stip. at 3-9, 13-16, 18).

---

[3] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).          .

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.[4]

**A.  The ALJ Properly Rejected the Opinion of Plaintiff's Treating Physician, Jack Akmakjian, M.D.**

Plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physician, Dr. Akmakjian. (See Joint Stip. at 3-9, 13). Defendant asserts that the ALJ provided valid reasons for rejecting Dr. Akmakjian's opinion. (See Joint Stip. at 9-13).

Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(b)-(d),

---

[4]  The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

4

416.927(b)-(d). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

If a treating doctor's opinion is not contradicted by another doctor, the ALJ can reject the treating doctor's opinion only for "clear and convincing reasons." Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir. 2008); Lester v. Chater, supra. If the treating doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the treating doctor's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007l); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester v. Chater, supra.

Jack Akmakjian, M.D., a physician at Akmakjian Spine and General Orthopaedics Center, treated Plaintiff from March 27, 2013 to March 26, 2014. (See AR 303-307, 310-17). Plaintiff was diagnosed with inter alia lumbar spine degenerative disc disease, lumbar spine facet arthropathy, lumbar spine buldge, thoracic spine degenerative disc disease, congenital stenosis, and bilateral shoulder inpingement. (See AR 303-307, 310).[5] In a Medical Opinion Re: Ability to Do Work-Related Activities (Physical) form dated October 24, 2014, Dr. Akmakjian opined that Plaintiff had the following functional limitations: can lift and

---

[5]     The records from Dr. Akmakjian are not very legible.

carry less than 10 pounds occasionally (no more than 1/3 of an 8-hour day) and frequently (1/3 to 2/3 of an 8-hour day); can stand and walk (with normal breaks) less than 2 hours during an 8-hour day; can sit (with normal breaks) about 6 hours during an 8-hour day; can sit 30 minutes before changing position; can stand 30 minutes before changing position; every 30 minutes must walk for 15 minutes; needs to shift at will from sitting or standing/walking; no twisting, stooping (bending), crouching, kneeling, climbing stairs and ladders; reaching (including overhead) and pushing/pulling are affected by the impairment; must avoid all exposure to extreme cold; and must avoid even moderate exposure to extreme heat, wetness, humidity, noise, fumes, odors, dusts, gases, poor ventilation, and hazards (machinery, heights); and on the average will be absent from work more than 3 times a month.  (AR 327-29).

After summarizing Dr. Akmakjian's opinion (see AR 19), the ALJ addressed it as follows: "I accord little weight to this opinion because it is not consistent with the record as a whole, *e.g.*, unremarkable physical examinations and mild MRI/x-ray findings as discussed above. Moreover, the opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. Furthermore, it is inconsistent with the claimant's testimony." (Id.).

The ALJ properly discredited Dr. Akmajian's opinion because it was not supported by the objective medical evidence and was conclusory.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (An ALJ "need not

accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."); <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly discounted treating physician's opinion for being "so extreme as to be implausible" and "not supported by any findings" where there was "no indication in the record what the basis for these restrictions might be"); <u>Magallanes v. Bowen</u>, 881 F.2d at 752 (ALJ's decision to reject the treating physician's opinion due to a lack of medical evidence was sufficiently "specific and legitimate" and based on substantial evidence in the record).

Although Plaintiff contends that Dr. Akmakjian's treatment records support Dr. Akmajian's opinion (<u>see</u> Joint Stip. at 7-8, citing AR 307 [March 22, 2013, reported increased pain in the low back, positive straight leg raise test on the left[6]], AR 306 [May 22, 2013, tender lumbar spine, positive straight leg raise on the left, decreased sensation on the left at S1], AR 305 [July 24, 2013, reported pain level on average 5 to 6 out of 10 (as high as 8-9 out of 10), positive straight leg raise on the left, notation that Plaintiff still cannot work for 3 months], AR 304 [October 29, 2013, reported persistence of lower back pain, positive straight leg raise on the left], AR 303

---

[6]     The "straight leg raise test" is when a medical practitioner raises a patient's leg upward while the patient is lying down. The test stretches the nerve root. *The Merck Manual of Diagnosis and Therapy*, 1490 (17th Ed. 1999). "A positive Lasegue or straight leg raising test (pain on straight leg raising) produces pain in the sciatic nerve and is significant for compression of the L4-L5 or L5-S1 spinal nerve roots." <u>Primero v. Astrue</u>, 2013 WL 394883, *2 at n.6 (C.D. Cal. Jan. 31, 2013)(citation omitted).

[December 11, 2013, reported pain worse in cold weather, reported inability to perform simple tasks at home, positive straight leg raise on the left, notation that Plaintiff still cannot work for 6 months]), the ALJ found that the "unremarkable physical examinations and mild MRI/x-ray findings" in the overall record, as discussed below, do not support the restrictive limitations to which Dr. Akmajian opined.

X-rays were taken on May 29, 2013: (1) Right shoulder. The findings were: "There is no significant change. The osseous structures and joint spaces are intact. No fractures or arthritic changes are observed. However, there now appears to be slightly increased acromial downsloping. This could represent a projectional artifact, however early rotator cuff entrapment cannot be excluded." Plaintiff was diagnosed with "[n]egative right shoulder but with mild acromial downsloping." (AR 285); (2) Thoracic spine. The findings were: "There is minimal scoliosis. Mild degenerative changes are present with slight disc disc space narrowing and early osteophyte formation. No fracture or sublaxations are observed." Plaintiff was diagnosed with "[n]egative thoracic spine with minimal degenerative changes." (AR 286); (3) Cervical spine. The findings were: "There is mild scoliosis. The vertebral bodies and intervertebral space are intact. The obliques views reveal the nerual formaina to be patent." Plaintiff was diagnosed with "[n]egative cervical spine." (AR 287); and (4) Left shoulder. The findings were: "The osseous structures and joint spaces are intact. No fractures or arthritic changes are observed. Again, there is mild

acromial downsloping which can result in rotator cuff entrapment." Plaintifff was diagnosed with "[n]egative left shoulder with acromial downsloping. (AR 288).

On October 10, 2013, Vicente Bernarbe, D.O., prepared a report of his orthopedic consultation with Plaintiff. (See AR 267-71). An orthopedic examination revealed inter alia the following: (1) Station and gait: "The gait was normal without ataxia or antalgia. The claimant was able to toe and heel week. He did not use any assistive device to ambulate. There were normal swing and stance phases." (AR 268); (2) Cervical spine: "The examination of the cervical spine revealed normal attitude and posture of the head. There was no significant tenderness to palpation. There was no visible or palpable spasm appreciated. Range of motion was full and painless." (Id.).; (3) Thoracic spine: "The inspection of the thoracic spine was unrevealing. There was normal kyphosis. Palpation elicited no tenderness." (AR 269); (4) Lumbar spine: "Observation reveals no abnormal curvature, masses, scars or scoliosis. The pelvis was level. He was tender at the lumbosacral region. There was mild paravertebral muscle spasm on the left. Sciatic notches and gluteal muscles were not tender. Flexion was 40 degrees, extension 20 degree, side bending 20 degrees to the left and right and rotation 45 degress to left." (Id.). Dr. Barnarbe also noted: "Positive straight leg raising on the left leg from a supine position at 45 degrees and from a seated position at 60 degress. He had positive

Lasegue's and Faber's manuever on the left leg."[7] (<u>Id.</u>).; (5) Shoulders: "The inspection of the left shoulder revealed no significant tenderness to palpation. Range of motion was full and painless. There was negative impingement sign and a negative cross arm abduction test. There was no instability in the shoulder. The right shoulder had the same range of motion as the left shoulder. There was a negative cross arm adduction test and a negative impingement sign There was no instability of the right shoulder." (<u>Id.</u>).; (6) Wrists: "The inspection revealed normal alignment and contour. There was no tenderness on palpation. Range of motion was full and painless in all planes." (<u>Id.</u>).; (7) Hands: "The inspection revealed no significant deformities. There was no atrophy of the intrinsic muscles. There was no tenderness. The basic hand functions were well preserved in fine and gross manipulations. The claimant was able to make full fists brining the tips of the fingers to mid palmar crease. Abduction and adduction of the thumbs were full. Range of the motion of the fingers was full and painless." (<u>Id.</u>).; (8) Hips: "The inspection was unrevealing. There was no tenderness on palpation. Range of motion was full and painless." (<u>Id.</u>).; and (9) Knees: "The inspection was unrevealing. There was normal alignment and contour. There was no tenderness on palpation. Range of motion was full and painless." (<u>Id.</u>). A neurological examination revealed gross intact motor strength in the upper and lower extremities, well-preserved sensation in the upper and lower

---

[7] "'Fabere' stands for flexion, abduction, external rotation and extension, and a positive Fabere sign may indicate a hip joint disorder." <u>Primero v. Astrue</u>, 2013 WL 394883, *4 at n.7.

extremities, and physiologic reflexes. (AR 270). An X-ray of the lumbar spine showed the following: "[S]traightening of the lumbar lordosis. The intervertebral disc spaces are well preserved. There is no compression fracture or dislocation. The anterior and posterior elements are intact." (Id.). An X-ray of the left shoulder showed "no acute fracture of dislocation" and unremarkable soft tissues. (Id.).

A January 27, 2014 MRI of Plaintiff's left shoulder (ordered by Dr. Akmakjian) revealed the following: "There is mild supraspinatus tendinosis with no rotator cuff tear[.] There is no infraspinatus or subscapularis tendon abnormality[.] [¶] There are mild acromiclavicular joint degenerative changes with small inferior spur[.] The acromion is type I with low risk of impingement[.] There are no areas of abnormal signal involving the humeral head or the body glenoid. [¶] There is a tear of the superior labrum or attachment of the tendon for long head of biceps. There is no anterior or posterior labral rear. There are no soft tissue masses." (AR 314).

A January 27, 2014 MRI of Plaintiff's right shoulder (ordered by Dr. Akmakjian) revealed the following: "There is mild tendinosis of the supraspinatus tendon. There is tiny focus of high signal on T2 weighted images within the supraspinatus tendon consistent with small focus of partial tear[.] No full-thickness tear is seen. There is no infraspinatus or subscapularis tendon tear. [¶] There are mild acromioclavicular joint degenerative changes[.] Acromion has smooth

11

undersurface and is type I with low risk of impingement.  There are no areas of abnormal signal involving the humeral head or the bony glenoid[.] [¶] There is no tear of the superior labrum or attachment of the tendon for long head of biceps.  There is probable tear of the anterior labrum.  This can be better evaluated with MR arthrogram.  No posterior or superior labral tear is seen.  There are no soft tissue masses[.]" (AR 315).

A February 18, 2014 MRI of Plaintiff's thoracic spine (ordered by Dr. Akmakjian revealed the following: "There is no appreciable intrinsic lesion of the thoracic spinal cord.  There is no developmental spinal stenosis, extramedullary/intradural mass, or bone marrow edema.  Heights of the thoracic vertebral bodies are well maintained. [¶] . . . [¶] T1-2 to T5-6: There is no disc protrusion, central stenosis, or cord compression. [¶] T6-7: There is mild right central stenosis with borderline compression of the right ventral cord due to approximately 33 mm right central protrusion of disc.  There is mild intervertebral disc space narrowing. [¶] T7-8: There is mild central stenosis with borderline compression of the ventral cord due to approximately 3 mm central posterior protrusion of dis.  There is mild interverterbral disc space narrowing. [¶] There is mild central stenosis without cord compression due to approximately 2-3 mm posterior protrusion of disc.  There is mild interverbral disc space narrowing. [¶] T9-10 to T12-L1: There is no disc protrusion, central stenosis, or cord compression." (AR 312-13).

The ALJ also properly discredited Dr. Amakjian's opinion because it was conclusory and did not explain what evidence was being relied on. See Thomas v. Barnhart, supra; Holohan v. Massanari, supra ("[T]he regulations give more weight to opinions that are explained than to those that are not."); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996)(an ALJ may "permissibly reject[] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions."). In his Opinion report dated October 24, 2014 (almost 7 months after last treating Plaintiff), Dr. Amakjian wrote that the medical findings supporting the limitations on Plaintiff's lifting/carrying, standing/walking, and sitting were "DME, X-Rays" and that the medical findings supporting the affected physical functions (i.e., reaching (including overhead), pushing/pulling) were "X-Rays, Physical Exam." (AR 328). However, Dr. Amakjian's notations failed to state with sufficient particularity what evidence supported his opinion.

Moreover, the ALJ properly discredited Dr. Amakjian's opinion because it was inconsistent with Plaintiff's testimony regarding his functional limitations. See Hensely v. Colvin, 600 Fed.Appx. 526, 527 (9th Cir. 2005)(the ALJ provided a specific and legitimate reason for giving little weight to a psychologisist's opinions based, in part, on the finding that the psychologist's opinions were inconsistent with the claimant's reported daily activities); Myers v. Barnhart, 2006 WL 1663848, *6 n.7 (C.D. Cal. June 6, 2006)("[A] treating physician's assessment of a claimant's restrictions may be rejected to the extent it

'appear[s] to be inconsistent with the level of activity' the claimant maintains, or contradicts Plaintiff's testimony.")(internal citation omitted). Plaintiff testified that he was able to regularly (5 or 6 days a week) help his wife with her ice cream business -- buying the merchandise (ice cream, candies, chips, sodas [2 24-packs every other week]), lifting the merchandise (he can lift more than a 24-pack of soda), and helping to load the merchandise into a van. (See AR 32-34; see also AR 205). This testimony was inconsistent with the functional limitations set forth in Dr. Amakjian's opinion report.

**B.   The ALJ Posed Complete Hypothetical Questions to the Vocational Expert**

Plaintiff asserts that the ALJ failed to include in the hypothetical questions to the vocational expert, and therefore failed to take into account, any limitations regarding Plaintiff's abilities to reach, handle, and finger, based on Plaintiff's severe impairment of bilateral shoulder acromial downsloping.[8] (See Joint Stip. at 14-16, 18). Plaintiff points out that the ALJ found that bilateral shoulder acromial downsloping was a severe impairment (AR 15), but did not include any limitations about Plaintiff's abilitiies to reach, handle, and finger in her hypothetical questions to the vocational expert (see AR 56-58) or in her RFC determination (see AR 16-20).

---

[8]   The acromion is the outer end of the spine of the scapula that forms the outer angle of the shoulder. See www.merriam-webster.com/medical/acromion.

Defendant asserts that the ALJ's determination about Plaintiff's RFC was adequate, since "[t]he mild objective findings in Plaintiff's medical record do not support such limitations." (<u>See</u> Joint Stip. at 16-17).

A hypothetical question to a vocational expert must accurately reflect a claimant's limitations. <u>See</u> <u>Robbins v. Social Sec. Admin.</u>, 466 F.3d 880, 886 (9th Cir. 2006)(". . . [I]n hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence"); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 956 (9th Cir. 2002)("In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record.")(citations omitted); <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988)("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . ."). Where a hypothetical question fails to "set out all of the claimant's impairments," the vocational expert's answers to the question cannot constitute substantial evidence to support the ALJ's decision. <u>See</u> <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991); <u>Gamer v. Secretary</u>, 815 F.2d 1275, 1280 (9th Cir. 1987); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984).

To the extent that Petitioner is repeating his contention that the ALJ did not properly reject Dr. Akmakjian's opinion, the Court has already rejected that contention. The Court notes that Dr. Akmakjian did not even opine that Plaintiff had any functional limitations in the areas of handling (gross manipulation) and fingering (fine manipulationl) (AR 328).

Here, the evidence in the record does not reflect that Plaintiff was limited in his abilities to reach, handle, and finger based on his bilateral shoulder acromial downsloping impairment. The May 29, 2013 X-rays of Plaintiff's right and left shoulders showed "mild acromial downsloping." (AR 286, 288). The October 2013 orthopedic examination showed that Plaintiff had a full and painless range of motion, no impingement and no instability in both shoulders; a full and painless range of motion in the wrists; a full and painless range of motion in the hands; and good grip strengh. (AR 269-70). The January 1, 2014 MRIs of Plaintiff's left shoulder and right showed only "mild acromiclavicular joint degenerative changes" and the acromions are "type 1 with low risk of impingement." (AR 314-15). Dr. Akmajian's records do not appear to contain any notations regarding hand, wrist or finger pain, testing, or treatment. (See AR 303-07, 310-11). Other than Dr. Akmajian's conclusory opinion that Plaintiff's reaching (including overhead) was affected by his impairment (AR 328), there are no opinions from any medical providers that Plaintiff was limited in his abilities to reach, handle and finger. (See AR 67-68 [Keith Wahl, M.D.,

reviewing physician], 88-90 [F. Kalmar, M.D., reviewing physician], 271 [Dr. Bernarbe, consultative examining physician]). Plaintiff has failed to cite to any evidence in the record showing that his bilateral shoulder acromial downsloping limited his abilities to reach, handle and finger. See Tacket v. Apfel, 180 F.3d 1094, 109 (9th Cir. 1999)("The burden of proof is on the claimant as to steps one to four.").

Therefore, the ALJ did not err in not including in her hypothetical questions to the vocational expert any limitations about Plaintiff's abilities to reach, handle and finger, or in not including any limitations about Plaintiff's abilities to reach, handle and finger in her RFC determination.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 5, 2017

                              /s/
                         ALKA SAGAR
              UNITED STATES MAGISTRATE JUDGE